UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM P. FRIERSON,

        Plaintiff,

vs.                             Case No.  3:04-cv-515-J-MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

        Defendant.
_____/

### MEMORANDUM OPINION AND ORDER[1]

      This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the matter **REMANDED**.

## I.    PROCEDURAL HISTORY

      Plaintiff filed an application for disability insurance benefits ("DIB") on January 16, 2002, alleging an inability to work since June 29, 2000.  (Tr. 71-73).  The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 61-62, 50-52).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on October 28, 2003.  (Tr. 45-46, 35-38).  On February 11, 2004, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 10-20).  On February 24, 2004, Plaintiff filed a Request for Review by the Appeals Council.  (Tr. 7-9).  The Appeals Council

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 6).

denied Plaintiff's request for review on May 10, 2004.  (Tr. 3-5).  Accordingly, the ALJ's

decision was the final decision of the Commissioner.  (Tr. 3).  Plaintiff timely filed his

Complaint in the U.S. District Court on June 23, 2004.  (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since June 29, 2000, due to an injury to the left ankle

and foot.  (Tr. 101).  However, at the hearing Plaintiff testified to additional problems

including a herniated disk in his back, neck pain, bilateral carpal tunnel syndrome, and low

back pain.  (Tr. 295-98).

### B.   Summary of Evidence Before the ALJ

Plaintiff was forty-eight years of age on the date the ALJ's decision was issued.  (Tr.

278, 10).  He completed a twelfth-grade education and two years of college.  (Tr. 278).

Plaintiff had past relevant work as a pipe fitter, maintenance repairer, automobile detailer,

order picker, chemical sales representative and car salesman.  (Tr. 281-87).  Plaintiff's

medical history is summarized in the ALJ's decision.  By way of summary, Plaintiff tripped

on a wood pallet while working on June 29, 2000 and injured his left ankle and foot.[2]  (Tr.

291).  Plaintiff was initially diagnosed with a Grade III left ankle sprain, but a subsequent

MRI on July 27, 2000, approximately one month after the injury, revealed Plaintiff had a

horizontal subacute fracture through the distal medial malleolus and partial tears of the

tibiocalcaneal and calcaneonavicular ligaments.  (Tr. 130-33).

---

[2] Both issues raised in this appeal relate only to Plaintiff's alleged reflex sympathetic dystrophy
(RSD) and the ALJ's failure to find it to be a medically determinable impairment.  Accordingly, the Court
will limit its summary of Plaintiff's medical history to Plaintiff's RSD.

Upon diagnosis of the fracture and ligament tears, Plaintiff was referred to Dr. Hiram Carrasquillo, M.D. of the Jacksonville Orthopaedic Institute, who recommended physical therapy for Plaintiff.  (Tr. 180-81).  On September 15, 2000, at his third follow-up visit with Dr. Carrasquillo, Plaintiff reported increasing pain, swelling and discomfort.  (Tr. 177).  At this point, Dr. Carrasquillo noted Plaintiff's x-rays revealed no evidence of fractures or dislocations and chronic pain syndrome was mentioned as the possible cause of Plaintiff's increased pain.  Id.  As a result, Dr. Carrasquillo referred Plaintiff to a pain management specialist for evaluation.  Id.

On October 18, 2000, Dr. Howard Weiss, D.O., a pain management specialist, evaluated Plaintiff and diagnosed him with left ankle pain syndrome and possible reflex sympathetic dystrophy (RSD) of the left foot.  (Tr. 126).  Dr. Weiss recommended a left true lumbar sympathetic block to determine whether or not the pain in the left ankle was sympathetically mediated.  Id.  At this point, Dr. Weiss referred Plaintiff to Dr. Peter Kovacs, M.D., in order to perform the lumbar blocks.  (Tr. 147).  Plaintiff was initially evaluated by Dr. Kovacs on November 20, 2000, at which time Plaintiff received his first lumbar block.  (Tr. 149).  Plaintiff stated the block reduced the numbness and tightness around his left ankle, but did not significantly impact the quality of his pain.  (Tr. 145).  Dr. Kovacs then performed two more lumbar blocks on Plaintiff on November 29, 2000 and December 27, 2000, respectively.  (Tr. 145, 142).  Following the second lumbar block, Plaintiff stated that his pain decreased by 30% - 40% for a couple of hours (Tr. 142), and following the third lumbar block Plaintiff reported a 50% decrease in pain lasting six hours. (Tr. 138).

On March 14, 2001, Claudio E. Vincenty, M.D., treated Plaintiff.  (Tr. 140).  Dr. Vincenty was also a pain management specialist and worked in the same practice as Dr. Kovacs.  Id.  Dr. Vincenty's records from that visit list Plaintiff's diagnosis as "Reflex sympathetic dystrophy, left ankle."  Id.  In addition, Dr. Vincenty stated "[Plaintiff] had been seen here in this clinic last year for treatment of his reflex sympathetic dystrophy. . . After his sympathetic blocks, the condition improved.  However, it returned at about the same intensity."  Id.  Dr. Vincenty then recommended another series of lumbar sympathetic blocks in order to determine whether most of the pain was of a mechanical nature or of sympathetic origin.  Id.

Per Dr. Vincenty's recommendation, Dr. Kovacs performed a fourth lumbar sympathetic block on Plaintiff on April 5, 2001.  (Tr. 138).  Following this fourth block, Plaintiff did not receive any decrease in pain; rather, he reported an aggravation of pain in his left foot, ankle, and big toe.  (Tr. 136).  When Plaintiff discussed this increased pain with Dr. Kovacs on April 30, 2001, Dr. Kovacs noted "this may be related to the reflex sympathetic dystrophy of his left leg," and recommended that they postpone the fifth lumbar sympathetic block until the big toe pain was improved.  Id.  When Plaintiff returned to Dr. Kovacs' office on August 2, 2001 his left foot was swollen and purple and blue in color.  (Tr. 134).  In addition, it was tender to touch from the entire calf down to the ankle.  Id.  Dr. Kovacs' report from this visit lists "Complex regional pain syndrome (reflex sympathetic dystrophy), left leg" in the impression section, thus, indicating Dr. Kovacs' belief that Plaintiff did, in fact, suffer from RSD.  Id.  Dr. Kovacs was prepared to perform a fifth lumbar sympathetic block on Plaintiff at this time, but Plaintiff was unaware that he was scheduled for the procedure on that day and the block was not performed.  Id.

4

Per the request of the worker's compensation insurance carrier, Dr. M.W. Kilgore, M.D., performed an independent medical examination on Plaintiff on June 14, 2001. (Tr. 193). In his report, Dr. Kilgore stated "there is no clinical evidence of a reflex sympathetic dystrophy;" however, he also recommended additional x-rays and a three phase bone scan in order to exclude RSD. (Tr. 194). Finally, Dr. Kilgore noted that "[Plaintiff] is not at Maximum Medical Improvement. Once these studies have been completed, depending upon findings, a Functional Capacity Evaluation to assign limits and future employment restrictions would be appropriate." (Tr. 195).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the

5

national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden

of persuasion through step four, while at step five, the burden shifts to the Commissioner.

Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of

the Social Security Act and was insured for benefits up to June 30, 2001.  (Tr. 14, 19).

Accordingly, Plaintiff was required to show that his disability began on or prior to June 30,

2001.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

since his alleged onset date, June 29, 2000.  Id.  At step two, the ALJ held "[t]he medical

evidence thus indicates that on or before June 30, 2001, the claimant had status-post left

medial malleolus fracture and degenerative disc disease of the lumbar spine."  (Tr. 16, 19).

In addition, the ALJ found "[g]iven Dr. Kilgore and Dr. Vincenty's records, the evidence does

not support reflex sympathetic dystrophy as a medically determinable impairment in this

case."  (Tr. 16).  The ALJ further found "[a]lthough at the hearing the claimant also alleged

bilateral carpal tunnel syndrome and a herniated disk in the neck, these impairments were

not present on or before his date last insured."  Id.  At step three, the ALJ determined

Plaintiff did not have an impairment, or any combination thereof, which met or equaled any

of the impairments listed in Appendix 1, Subpart P of the Regulation No. 404.  (Tr. 16, 19).

The ALJ further determined that Plaintiff retained the residual functional capacity

("RFC") to "sit at least six hours and stand/walk up to two hours in an eight-hour workday.

He can lift and carry ten pounds occasionally."  (Tr. 18, 19).  In making this determination,

the ALJ found Plaintiff's assertions concerning his impairments and their impact on his

ability to work were not entirely credible.  (Tr. 19).  At step four, the ALJ utilized the

testimony of a vocational expert (V.E.) during the hearing to determine if Plaintiff could

6

perform any of his past relevant work.  (Tr. 313-15).  The V.E. testified that all of Plaintiff's

prior jobs had exertion levels ranging from light to heavy physical exertion.  (Tr. 314-15).

Thus, the ALJ determined since Plaintiff's RFC was for no more than sedentary work, he

was unable to perform any of his past relevant work.  (Tr. 18, 20).  At step five, the ALJ

found that Plaintiff could perform the full range of sedentary work; consequently, Plaintiff

was not disabled within the meaning of the Social Security Act.  (Tr. 19, 20).

### III.  STANDARDS OF LAW

#### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the

correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and

whether the findings are supported by substantial evidence.  Richardson v. Perales, 402

U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if

supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than

a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence

of a fact, and must include such relevant evidence as a reasonable person would accept as

adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)

(citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at

401).

Where the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the reviewer would have reached a contrary result as finder of fact,

and even if the reviewer finds that the evidence preponderates against the Commissioner's

decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan,

932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67

F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must

scrutinize the entire record to determine reasonableness of factual findings).

## IV.    ANALYSIS

Plaintiff argues two issues on appeal.  First, Plaintiff believes the ALJ erred in finding

that the evidence did not support reflex sympathetic dystrophy (RSD) as a medically

determinable impairment.  (Doc. 11).  Second, Plaintiff contends the ALJ erred by failing to

fully and fairly develop the record with regards to Plaintiff's RSD.  Id.

The Commissioner responds that the ALJ did not err in rejecting RSD as a medically

determinable impairment because the decision is supported by substantial evidence.  (Doc.

12-1).

**Whether the ALJ erred by discounting reflex sympathetic dystrophy as a
medically determinable impairment.**

In evaluating a claim for disability benefits, the opinion of a treating physician "'must

be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"

Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d

1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit has determined "good cause" exists when

the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence

supported a contrary finding; or (3) treating physician's opinion was conclusory or

inconsistent with the doctor's own medical records."  Phillips, 357 F.3d at 1241.  In any

event, whenever an ALJ decides to disregard the opinion of a treating physician, she must

clearly articulate the reasons for so doing.  Id.

In this case, two of Plaintiff's treating physicians, Drs. Kovacs and Vincenty,

diagnosed Plaintiff with RSD.  Specifically, the record indicates that Dr. Weiss believed RSD

to be a possible cause of Plaintiff's pain, and consequently, referred Plaintiff to Drs. Kovacs

and Vincenty, pain management specialists, for further evaluation and treatment.  (Tr. 126,

147).  The records from Plaintiff's office visits with Drs. Kovacs and Vincenty indicate that

initially the goal of Plaintiff's treatment was to "[r]ule out complex regional pain syndrome

type I (reflex sympathetic dystrophy), left foot and ankle."  (Tr. 149).  However, neither Dr.

Kovacs nor Dr. Vincenty ever conclusively ruled out RSD; to the contrary, medical reports

generated by both Drs. Kovacs and Vincenty explicitly list RSD as Plaintiff's diagnosis (Tr.

134, 140).

        In reaching the conclusion to discount RSD, the ALJ stated "[g]iven Dr. Kilgore and

Dr. Vincenty's records, the evidence does not support reflex sympathetic dystrophy as a

medically determinable impairment in this case."  (Tr. 16).  Here, the ALJ cited to records of

Drs. Kilgore and Vincenty, who each examined Plaintiff only one time, but failed to cite the

records of Dr. Kovacs who treated Plaintiff six times.  The law is clear that the ALJ is

required to consider all the evidence in the claimant's record when making a disability

determination.  20 C.F.R. §404.1520(a).  While the ALJ has broad discretion in accepting

and rejecting evidence, the ALJ must clearly state the weight afforded to each piece

evidence, and if the ALJ determines to reject any evidence, explain fully the reasons for

rejecting it.  See Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) ("In assessing the

medical evidence in this case, the ALJ was required to state with particularity the weight he

gave the different medical opinions and the reasons therefor."); Gibson v. Heckler, 779 F.2d

619, 623 (11th Cir. 1986) (reversing and requiring ALJ on remand to state the weight

9

accorded to each item of impairment evidence and the reasons for his decisions on such evidence).

Here, the ALJ failed to discuss Dr. Kovacs' diagnosis of Plaintiff's condition as RSD, and, as a treating physician, Dr. Kovacs' opinion is to be afforded substantial weight unless good cause is shown to the contrary.  Phillips, 357 F.3d at 1240.  As this Court is unable to determine what role, if any, Dr. Kovacs' records played in the ALJ's decision to rule out RSD, it is unclear whether this evidence was ignored, overlooked, or rejected.  The Court believes this evidence is probative because it is inconsistent with the ALJ's finding that RSD was not a medically determinable impairment in this case.  Indeed, if the ALJ were to accept Dr. Kovacs' opinion dated August 2, 2001, then RSD may be a medically determinable impairment in this case.

Because the ALJ failed to state the weight she accorded the opinions of Dr. Kovacs, this cause is due to be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.  This Court expresses no opinion as to whether Dr. Kovacs' medical opinion must be accepted or rejected; however, the ALJ is reminded that she must "state the weight [she] accords to each item of . . . evidence and the reasons for [her] decisions to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing Gibson v. Heckler, 779 F.2d 619 (11th Cir. 1986)).  In the absence of statements about the weight given to Dr. Kovacs' opinion and the reasons for rejecting it, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

The ALJ also referenced Dr. Kilgore's record in her conclusion that RSD was not a medically determinable impairment; however, Dr. Kilgore's opinion alone does not provide substantial evidence to support the ALJ's conclusion.  Dr. Kilgore only examined Plaintiff one time, at the request of the worker's compensation carrier, and stated there was no clinical evidence of RSD; however, he recommended additional tests to rule out RSD and acknowledged that Plaintiff was not at maximum medical improvement.  (Tr. 194-95).  Thus, given Dr. Kilgore's recommendation for additional tests to rule out RSD coupled with the ALJ's failure to state the weight accorded to Dr. Kovacs' contrary opinion, this Court finds that Dr. Kilgore's opinion alone does not provide sufficient substantial evidence to support the ALJ's finding that RSD was not a medically determinable impairment in this case.

Accordingly, the undersigned will remand the case to the ALJ, with the instruction that she shall review the medical reports of Dr. Kovacs, explain in detail the amount of weight afforded to the opinions and, if any part of the opinions are rejected, explain fully why they are being rejected.

### Whether the ALJ erred by failing to fully and fairly develop the record

The second issue raised by Plaintiff on appeal is that the ALJ erred by failing to fully and fairly develop the record with regards to Plaintiff's RSD.  (Doc. 11).  Specifically, Plaintiff argues that by ruling out RSD as a medically determinable impairment, the ALJ failed to fully appreciate or assess Plaintiff's vocational capabilities.  Id.

In order to be entitled to reversal based on a failure to fully and fairly develop the record, Plaintiff must proffer evidence that should have been made part of the record and must show that he was prejudiced by not having such evidence in the record.  Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984).  The Commissioner responds that Plaintiff

11

failed to meet this burden because he did not present any evidence that should have been part of the record, and consequently, could not show any prejudice from its absence.  (Doc. 12-1). The Court agrees with the Commissioner and finds that Plaintiff's claim that the ALJ failed to fully and fairly develop the record is without merit.

## V.     CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to (1) reconsider the medical opinions of Dr. Kovacs, and, if they are rejected, explain fully why they are being rejected; and (2) conduct any other proceedings deemed appropriate.  Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  4th  day of August, 2005.

_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record